UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| MARIO MARTIN,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED RENTALS (NORTH AMERICA), INC.,<br><br>    Defendant. | Case No. 3:25-cv-02041-JSC<br><br>**ORDER RE: PLAINTIFF'S MOTION FOR REMAND; DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. Nos. 17, 19 |
|---|---|

Mario Martin filed this putative wage and hour class action in the San Francisco County Superior Court against his former employer United Rentals. In the Complaint, Plaintiff alleges various violations of the California Labor Code, including: (1) failure to pay wages for all hours worked; (2) failure to pay overtime; (3) failure to provide meal periods; (4) failure to provide rest periods; (5) failure to indemnify for employment-related expenditures; (6) failure to provide complete and accurate wage statements; (7) failure to timely pay all earned wages upon termination of employment; and (8) failure to pay sick wages, as well as a claim under California's Unfair Competition Law, Business and Professions Code § 17200. (Dkt. No. 1-2.[1])

Defendant removed the action to federal court, asserting this Court has jurisdiction under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d)(2). Plaintiff moves to remand for lack of subject matter jurisdiction and Defendant has separately moved to compel arbitration. (Dkt. Nos. 17, 19.) After carefully considering the parties' briefs and the relevant legal authority, the Court concludes that oral argument is unnecessary, *see* Civ. L.R. 7-1(b), VACATES the June 3, 2025 hearing, DENIES the motion to remand, GRANTS the motion to compel arbitration, and STAYS the action pending arbitration.

---

[1] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

**DISCUSSION**

**I.    MOTION TO REMAND**

    **A.    CAFA Jurisdiction**

"CAFA gives federal district courts original jurisdiction over class actions in which the class members number at least 100, at least one plaintiff is diverse in citizenship from any defendant, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015) (citing 28 U.S.C. § 1332(d)). "CAFA's provisions should be read broadly, with a strong preference that interstate class actions should be heard in federal court if properly removed by any defendant." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) (cleaned up); *see also Ibarra*, 775 F.3d at 1197 ("Congress intended CAFA to be interpreted expansively.").

Here, two out of three of CAFA's jurisdictional requirements are uncontested. First, the size of the putative class exceeds 100 people. (Dkt. No. 1-6 ¶¶ 3-4.) Second, there is minimal diversity of citizenship: Plaintiff Martin is a citizen of California and United Rentals is organized under the laws of Delaware and has its principal place of business in Connecticut. (Dkt. No. 1 ¶¶ 21-22.) The parties contest the third requirement—whether "the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs." *Ibarra*, 775 F.3d at 1195.

The amount in controversy is "the maximum recovery a plaintiff could reasonably recover." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019). Once the plaintiffs challenge the amount in controversy, the burden falls on the defendant to prove the amount-in-controversy requirement is satisfied by a preponderance of the evidence. *Dart Cherokee*, 574 U.S. at 82. The "'amount at stake' does not mean likely or probable liability; rather, it refers to possible liability." *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 994 (9th Cir. 2022); *see also id*. ("the amount in controversy is supposed to be an estimate of the *entire* potential amount at stake in the litigation") (emphasis in original).

A defendant's "mere speculation and conjecture, with unreasonable assumptions" cannot establish removal jurisdiction and meet the evidentiary standard. *Ibarra*, 775 F.3d at 1197. An unreasonable assumption is one that is not "grounded in real evidence." *Id*. at 1199. On the other

hand, an assumption may be reasonable "if it is founded on the allegations of the complaint." *Arias*, 936 F.3d at 925; *see also Perez v. Rose Hills Co.*, 131 F.4th 804, 808 (9th Cir. 2025) ("those assumptions…can be founded on the allegations of the complaint and do not necessarily need to be supported by evidence."). The district court's task is simply to determine if the defendant's "reasoning and underlying assumptions are reasonable." *Jauregui*, 28 F.4th at 993.

The Complaint does not specify the amount in controversy, but alleges the aggregate amount in controversy for the California sub-class is under $5 million. (Dkt. No. 1-2 at ¶ 35.) In the Notice of Removal, Defendant estimates a total amount in controversy of more than $16 million which is based on (1) $9,874,740 for unpaid rest period premiums, (2) $6,141,719.60 for waiting time penalties, and (3) attorney's fees of between $90,000 to $199,000. (Dkt. No. 1 at ¶¶ 27(f), 28(e), 29(b).)

### 1. Unpaid Rest Break Premiums

Defendant estimates $9,874,740 for unpaid rest period premiums. Defendant calculated this figure by multiplying the estimated hourly rate ($20) by the number of workweeks (164,579) by the number of violations per week (3). (Dkt. No. 1 at ¶ 28(e).) Defendant based the workweek number and number of violations per week on its employment records which show non-exempt hourly employees in California generally work five days a week. (Dkt. No. 1-6 at ¶ 9.) Further, because Plaintiff alleges the failure to provide rest breaks constitutes unfair competition under the UCL, it is subject to a four-year statute of limitations so the workweeks are calculated from December 13, 2020 to June 5, 2023. (Dkt. No. 1 at ¶ 28(b), (d) (quoting Dkt. No. 1-2 at ¶ 28).)

Plaintiff argues the $9,874,740 figure is based on the unsupported assumption that every full-time class member experienced at least three rest break violations a week. Plaintiff insists the Complaint only alleges class members were "periodically" and "from time to time" not provided rest breaks. (Dkt. No. 1-2 at ¶¶ 12, 90-93.) The Complaint, however, also alleges Defendant had a policy that prohibited employees from leaving the premises during their rest period. (Dkt. No. 1-2 at ¶ 12.) Because California law requires employers allow employees to leave the work premises during breaks, *see Augustus v. ABM Sec. Servs., Inc.*, 2 Cal. 5th 257, 260 (2016), as modified on denial of reh'g (Mar. 15, 2017), Defendant counters it is reasonable to assume a

3

1    100% violation rate, although it assumed only a three times a week violation rate.

2          The Ninth Circuit's recent ruling *Perez v. Rose Hills Co*., 131 F.4th 804 (9th Cir. 2025), is

3    dispositive.  There, the defendant "provided a declaration from a company representative showing

4    the number of nonexempt employees it employed during the class period" and "then computed the

5    amount in controversy by making an assumption about the rate at which it was alleged to have

6    committed the various violations" "tether[ing] that assumption to the language in the complaint—

7    namely, that it had committed the alleged violations 'at times' and 'throughout the statutory

8    period.'" *Id*. at 809.  The defendant initially assumed a violation rate of one-hour per week, but

9    when the district court issued an order to show cause, reduced that violation rate by 50 percent.  In

10   finding the amount in controversy requirement satisfied, the Ninth Circuit stated:

> It may be true that the phrase "at times" could support a lower violation rate as easily as it could support the violation rate that Rose Hills assumed. But that does not automatically render the rate assumed by Rose Hills unreasonable. And if Perez believed that some other assumption would have been more reasonable, she was free to propose that rate. (She was also free to use some more specific phrase than "at times" when drafting the complaint; had she done so, she could have constrained the range of assumptions that Rose Hills could reasonably adopt.) The district court could then have weighed the evidence and arguments in deciding which assumption was more appropriate. *See Jauregui*, 28 F.4th at 996.

17   *Id.* at 810.

18         So too here.  In moving to remand, Plaintiff proposed no alternative calculation. On reply,

19   Plaintiff argues it is not required to do so.  Not so.  When challenging a defendant's assumption,

20   an opposing party may not merely state the assumption is unreasonable; instead, the opposing

21   party should posit an alternative assumption "grounded in real evidence, such as an affidavit [by

22   an aggrieved party]." *Ibarra*, 775 F.3d at 1199.  Further, given the Complaint's allegations stating

23   Defendant had a policy of not allowing employees to leave the premises, which would violate

24   California Labor Code § 226.7(c) on its face, Defendant's assumption of three violations per

25   workweek is reasonable and, even if reduced by 50 percent as in *Perez,* would put the amount in

26   controversy on this claim alone at $4,937,370.  *See* Cal. Lab. Code § 226.7(c) (providing that an

27   employee who experiences a meal or rest period violation is entitled to "one additional hour of pay

28   at the employee's regular rate of compensation for each workday that the meal or rest ... period is

4

not provided."). And this calculation is only for violations through June 5, 2023, although Plaintiff alleges ongoing violations. (Dkt. No. 1 at ¶ 28(d), n.4.)

Accordingly, Defendant's assumption Plaintiff's unpaid rest period premium claim places $9,874,740 at controversy is based on reasonable assumptions and even if this amount is reduced by half, the jurisdictional amount in controversy would be satisfied with only a fraction of the estimated waiting time penalties discussed below.

### 2.     Waiting Time Penalties

Defendant estimates $6,141,719.60 for waiting time penalties. This number is based on the following: (1) 907 individuals ended their employment between December 13, 2021 and February 10, 2025 (Dkt. No. 1-6 at ¶ 6); (2) each of these employees is entitled to waiting time penalties because Plaintiff alleges every employee was submitted to uniform unlawful practices (Dkt. No. 1 at ¶ 27(b), n. 3; Dkt. No. 1-2 at ¶ 108); (3) these employees worked more than eight hours per shift (Dkt. No. 1-6 at ¶ 9); (4) of the 907 employees, 900 were terminated more than 30 days before the Notice of Removal was filed, and 860 were terminated 30 or more days before the filing of the Complaint (*Id.* at ¶ 7); and (5) the sum of the hourly rate of the 900 employees was $25,430.23, with the seven employees who were terminated less than 30 days before the Notice of Removal earning hourly rates of $25.50, $31.50, $21.00, $36.16, $40.00, $33.07, and $32.00, respectively. (*Id.* at ¶ 8; Dkt. No. 1 at ¶ 27(e).) These assumptions yield the following calculations:

| Late Days | Number of Employees | Final Daily Rate of Pay | Penalties |
|---|---|---|---|
| 30+ days | 900 | Varied | $25,409.23 (sum of 900 employees' final hourly rates) x 8 hours x 30 days = $6,098,215.20 |
| 28 days | 1 | $32.00 x 8 hours = $256.00 | $256.00 x 28 days = $7,168 |

5

| | | | |
|---|---|---|---|
| 27 days | 2 | $40 x 8 hours = $320 $33.07 x 8 hours = $264.56 | $320 x 27 days = $8,640 $264.56 x 27 days = 7,143.12 |
| 26 days | 1 | $36.16 x 8 hours = $289.28 | $289.28 x 26 days = $7,521.28 |
| 23 days | 1 | $21.00 x 8 hours = $168.00 | $168.00 x 23 days = $3,864 |
| 21 days | 1 | $31.50 x 8 hours = $252.00 | $252.00 x 21 days = $5,292 |
| 19 days | 1 | $25.50 x 8 hours = $204.00 | $204.00 x 19 days = $3,876 |
| | | | Total: **$ 6,141,719.60** |

(Dkt. No. 1 at ¶ 27(f).) Plaintiff advances three arguments as to why Defendant's calculations are based on unsupported and unreasonable assumptions. None is availing.

First, Plaintiff contends Defendant's assumptions regarding the shift length, average hourly rate, and number of employees terminated are unreasonable. In response, Defendant offers a supplemental declaration from Anthony Dobson, United Rental's Payroll Manager during the relevant period. (Dkt. No. 18-1 at ¶ 1.) Mr. Dobson's declaration elaborates on the figures he provided in his declaration in support of removal and attests based on his review of the employment records, all 907 employees at issue worked full-time schedules and full-time employees are expected to work 40 hours and 5 days a week, and California employees worked an average of 10.33 hours per shift for an average of $31.12 per hour. (Dkt. No. 18-1 at ¶¶ 9-10, 13.) Given Mr. Dobson's explanation, Defendant's assumptions are reasonable.

Second, Plaintiff contends it is unreasonable to assume the calculations apply to each of the 907 employees. However, this assumption is based directly on a Complaint allegation: "PLAINTIFF demands thirty days of pay as penalty for not paying all wages due at time of termination for *all employees* who terminated employment during the CALIFORNIA LABOR SUB-CLASS PERIOD." (Dkt. No. 1-2 at ¶ 109 (emphasis added).)

Third, Plaintiff insists it is unreasonable to assume the class would be entitled to the

6

1  maximum waiting time penalty. Under California law, an employer who fails to pay wages an
2  employee is due upon termination may be liable for the wages of the employee until the unpaid
3  amounts are satisfied or the employee files a lawsuit, but an employee may not receive more than
4  30 days' worth of wages. Cal. Lab. Code § 203(a). Defendant's assumption is reasonable because
5  the amount in controversy reflects the *maximum* amount the plaintiff could possibly recover on
6  behalf of the class. *See Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019); *see*
7  *also Jauregui v. Roadrunner Transp. Servs.*, 28 F.4th 989, 994 (9th Cir. 2022) (holding it is
8  reasonable to assume that "vast majority (if not all)" terminated putative class members were
9  entitled to 30 days of waiting time penalties).

10  Accordingly, Defendant reasonably assumes Plaintiff's waiting time penalty claim places
11  $6,141,719.60 in controversy.

### B. Attorney's Fees

Defendant estimates attorney's fees of $90,000 to $199,000 which is based on 200 hours of work at Plaintiff's attorney's hourly rates as evidenced in declarations filed in other matters. (Dkt. No. 1 at ¶ 29.) Plaintiff argues these assumptions are unreasonable and unsupported. The Court need not consider Plaintiff's arguments as the amount in controversy requirement is more than satisfied by the allegations as to unpaid rest period premiums and waiting time penalties.

\*\*\*

Accordingly, Defendant has established by a preponderance of the evidence that the amount in conversely exceeds $5 million and Plaintiff's motion to remand is denied.

## II.   MOTION TO COMPEL ARBITRATION

The Federal Arbitration Act (FAA) governs arbitration agreements "evidencing a transaction involving commerce." 9 U.S.C. § 2. Such agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id*. In resolving a motion to compel arbitration under the FAA, a court's inquiry is limited to two "gateway" issues: "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. If both conditions are met, the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Lim v.*

7

*TForce Logistics, LLC*, 8 F.4th 992, 999 (9th Cir. 2021) (internal quotation marks and citations removed).

Defendant moves to compel arbitration based on the "Mutual Agreement to Arbitrate with United Rentals" Plaintiff electronically accepted on August 21, 2021 when he was hired by Defendant (hereafter the "Arbitration Agreement"). The Arbitration Agreement provides in relevant part:

> PLEASE REVIEW THIS SCREEN CAREFULLY BECAUSE IT CONTAINS BINDING CONTRACTUAL TERMS THAT AFFECT YOUR LEGAL RIGHTS.
> BY SELECTING THE "I ACCEPT" BUTTON BELOW YOU ARE AGREEING TO BE BOUND TO ALL OF THE TERMS CONTAINED ON THIS SCREEN.
>
> By clicking "I Accept", you hereby agree that:
>
> The Mutual Agreement to Arbitrate: Overview
>
> Except for the claims set forth in the paragraph below, United Rentals, Inc. and its subsidiaries, parents and other affiliates, current and former employees, officers, directors, agents, and successor entities (hereafter collectively referred to as the "Company") and you are mutually required to arbitrate any and all disputes, claims, or controversies (the "Arbitrable Claims") against the other that could be brought in a court including, but not limited to, all claims arising out of your hire, the Company's decision not to interview or hire you, your employment and the cessation of employment. This Agreement to arbitrate includes, but is not limited to, claims under the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964; the Fair Labor Standards Act; the Family and Medical Leave Act; the Americans with Disabilities Act of 1990; Section 1981 through 1988 of Title 42 of the United States Code; the Equal Pay Act; the Worker Adjustment and Retraining Notification Act; any other federal, state or local anti-discrimination laws; and any other federal, state, or local law, ordinance or regulation, or based on any public policy, contract, tort, or common law or any claim for costs, fees, or other expenses or relief, including attorney's fees. The Arbitrable Claims also include disputes arising out of or relating to the interpretation or application of this Agreement, including the enforceability and validity of the Agreement or any portion of this Agreement; provided, however, that only a court may decide whether this Agreement allows arbitration of Arbitrable Claims on a class, collective, multi-party, or other representative basis (which it does not). This Agreement is governed by the Federal Arbitration Act, to the maximum extent permitted by applicable law.

(Dkt. No. 19-5 at 3.)[2]

Plaintiff does not dispute he entered into this Arbitration Agreement. (Dkt. No. 21 at 8.) Instead, he contends the FAA does not apply to the Arbitration Agreement and, even if it does, the Arbitration Agreement is procedurally and substantively unconscionable.

### A.  The FAA Applies

Plaintiff does not dispute the Arbitration Agreement states it "is governed by the [FAA], to the maximum extent permitted by applicable law." (Dkt. No. 19-5 at 3.) Instead, he insists Defendant has failed to meet its burden of demonstrating the FAA applies because it has not offered evidence *Plaintiff* himself engaged in interstate commerce as Defendant's employee,

---

[2] The excluded claims are not relevant here.

1  although he does not dispute Defendant engages in interstate commerce. Plaintiff is wrong. When

2  an arbitration agreement expressly adopts the FAA as governing the agreement, and the contract

3  involves interstate commerce, the FAA governs the parties' arbitration agreement. *See Rodriguez*

4  *v. Am. Techs., Inc.*, 136 Cal. App. 4th 1110, 1122 (2006) (when the parties "adopted the FAA—all

5  of it—to govern their arbitration," federal arbitration law applies, and the "court will not rewrite

6  their contract").

7  The cases Plaintiff relies on are inapposite. In *Carbajal v. CWPSC, Inc.*, the court noted

8  the general rule that when asserting FAA preemption, an employer must submit "declarations or

9  other evidence showing the nature of the employer's business *or* the scope of the employee's

10  work." 245 Cal. App. 4th 227, 239 (2016) (emphasis added). Because the employer "presented no

11  evidence to establish any connection to interstate commerce," it failed to meet its burden. *Id.* at

12  239. Here, in contrast, Defendant has submitted a declaration attesting:

> At the time of this filing, United Rentals has approximately 1,400 separate rental locations throughout the United States and Canada. United Rentals performs services that require its employees to regularly use telephone, Internet, and online services to maintain relationships with existing clients, establish new rental and sales accounts, and negotiate pricing on equipment rentals and contractor supplies, with customers and vendors located all over the country and abroad. United Rentals' employees, including Equipment Associates, perform duties related to these services.

18  (Dkt. No. 19-4 at ¶ 3.) Defendant has thus offered evidence it engages in interstate commerce.

19  Plaintiff's reliance on *Padilla Ayala v. Teledyne Def. Elecs.*, 533 F. Supp. 3d 920 (C.D.

20  Cal. 2021), is likewise unpersuasive. The court there was considering whether the arbitration

21  agreement fell under the New York Convention which turned, in part, on whether the agreement

22  was commercial in nature. *Id.* at 925-26. In concluding defendant failed to meet its burden of

23  demonstrating it engaged in interstate commerce, the court noted defendant had simply

24  "mention[ed] its operations [we]re 'national in scale'" but there was no showing of how plaintiff's

25  duties in Los Angeles impacted those national operations, including for example "that during the

26  course of her work she used an instrumentality of interstate commerce such as a telephone, the

27  mail, or an electronic communication system." *Id.* at 926. Plaintiff, however, concedes his job

28  responsibilities involve an instrumentality of interstate commerce. (Dkt. No. 21-1 at ¶ 3 (attesting

1  as part of his job responsibilities he "communicated" with "out-of-state vendors and customers.").)

2  Given the Arbitration Agreement's express invocation of the FAA and the nature of

3  Defendant's work and Plaintiff's employment, the FAA applies here.

**B.    The Delegation Clause Encompasses Plaintiff's Unconscionability Arguments**

Gateway questions of arbitrability are typically for a court to decide, even when there is a facial agreement to arbitrate. *Portland GE v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985 (9th Cir. 2017). Gateway questions include "whether the parties have a valid arbitration agreement or are bound by a given arbitration clause, and whether an arbitration clause in a concededly binding contract applies to a given controversy." *Id.* (internal quotation marks and citation omitted). However, "parties may delegate the adjudication of gateway issues if they 'clearly and unmistakably' agree to do so." *Id.*; *see also Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) ("parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy" through a delegation clause) (internal citation omitted). "[L]anguage delegating to the arbitrators the authority to determine the validity or application of any of the provisions of the arbitration clause[ ] constitutes an agreement to arbitrate threshold issues concerning the arbitration agreement." *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208 (9th Cir. 2016) (citing *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) (quoting *Rent-A-Ctr.*, 561 U.S. at 68)).

The Arbitration Agreement here includes a delegation clause:

> The Arbitrable Claims also include disputes arising out of or relating to the interpretation or application of [the] Agreement, including the enforceability and validity of the Agreement or any portion of [the] Agreement, provided, however, that only a court may decide whether this Agreement allows arbitration of Arbitrable Claims on a class, collective, multi-party, or other representative basis (which it does not).

(Dkt. No. 19-5 at 3.) While a party can challenge a delegation clause on unconscionability grounds, "the party resisting arbitration must specifically reference the delegation provision and make arguments challenging it." *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009-10 (9th Cir. 2023). Here, Plaintiff does not even mention the delegation clause in his opposition brief, and thus has not challenged the delegation clause on unconscionability grounds. *See Rent-A-Center,*

10

*West, Inc. v. Jackson*, 561 U.S. 63, 72-73 (2010) (concluding the plaintiff had not sufficiently challenged the delegation provision when he only argued that "the arbitration agreement as a whole [was] substantively unconscionable," and "did [not] even mention the delegation provision" in his opposition brief).

Because Plaintiff does not challenge the delegation clause and the delegation clause clearly and unmistakably delegates the gateway question of arbitrability to the arbitrator in the first instance, an arbitrator, not the Court, must resolve Plaintiff's unconscionability arguments. So, the motion to compel arbitration must be granted.

### C. Plaintiff's Class Claims

Defendant also requests dismissal of Plaintiff's putative class claims based on the class action waiver in the Arbitration Agreement. The Arbitration Agreement delegation clause specifically provides "only a court may decide whether this Agreement allows arbitration of Arbitrable Claims on a class, collective, multi-party, or other representative basis (which it does not)." (Dkt. No.19-5 at 3.) Elsewhere, the Agreement states:

> No Arbitrable Claim may be initiated or maintained on a putative or certified class, collective, multi-party, or other representative action basis either in a court or in Arbitration and must be brought on an individual basis only, and arbitration on an individual basis is the exclusive remedy. Any Arbitrable Claim purporting to be brought as a putative or certified class, collective, multi-party or other representative action basis will be decided as an individual claim in Arbitration.

(*Id*. at 4.) Under the FAA, courts must enforce class action waivers. *Epic Systems Corp. v. Lewis*, 584 U.S. 497, 524-25 (2018); *see also Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 658-69 (2022). Plaintiff does not argue otherwise, and instead, reiterates his argument that the Arbitration Agreement is unconscionable. But, as explained above, that is a matter for the arbitrator to decide in the first instance. Accordingly, Defendant's motion to dismiss the class claims is denied without prejudice to renewal following the arbitrator's decision.

### CONCLUSION

For the reasons set forth above, Plaintiff's motion to remand is DENIED and Defendant's motion to compel arbitration is GRANTED. This action is STAYED pending arbitration. *See*

11

*Smith v. Spizzirri*, 601 U.S. 472, 478 (2024). The parties shall file a joint report advising the Court of the status of the arbitration proceedings every 180 days until they jointly inform the Court that this matter can be closed and removed from the docket or that the stay should be lifted.

**IT IS SO ORDERED.**

Dated: June 2, 2025

_____
JACQUELINE SCOTT CORLEY
United States District Judge